346 So.2d 734 (1977)
Troy BRUHL
v.
Loel WHITE.
No. 11245.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
Rehearing Denied June 13, 1977.
*736 Joel B. Dickinson, Baton Rouge, for Troy Bruhl, plaintiff-appellant.
Iddo Pittman, Jr., Hammond, for Loel White, defendant-appellee.
Before LANDRY, EDWARDS and COLE, JJ.
LANDRY, Judge.
Plaintiff (Appellant) appeals from judgment dismissing his suit against defendant (Appellee) for damages for alleged loss of income, loss of equipment, deterioration of health and humiliation and embarrassment reputedly caused by Appellee's breach of a lease of the Magnolia Restaurant in Hammond, Louisiana. Appellee reconvened for alleged delinquent rent, which claim was rejected by the trial court inasmuch as the judgment is silent with respect thereto. Defendant has neither appealed nor answered plaintiff's appeal. We affirm in part, reverse in part and remand to the trial court for further proceedings.
The following issues are presented for determination: (1) Did the parties enter into a verbal lease by virtue of certain parol agreements and their actions pursuant thereto; (2) Did the parties intend that the existence of a lease between them depended upon reduction of the agreement to writing specifying the precise terms of a lease; and, (3) Did the parties revoke the agreement by mutual consent.
Appellee owned the Magnolia Inn Motel, Hammond, which consisted of a motel only, and to which establishment Appellee wished to add a restaurant for the convenience and accommodation of his motel guests. Not wishing to operate the proposed restaurant himself, Appellee was seeking an experienced restaurant man to whom he intended to lease the proposed restaurant. In July, 1972, Appellant, who managed a Pitt Grill Restaurant in Baton Rouge, learned that Appellee was seeking an experienced restaurant operator. Appellant contacted Appellee and negotiations began between them for the lease of the proposed facility.
Eventually, it was orally agreed that Appellee would build a restaurant by adapting Appellee's existing plans to meet Appellant's needs and recommendations. It was further agreed Appellee would provide the building and the necessary front furnishings, meaning tables, chairs and counters in the dining area, and that Appellant would provide all kitchen equipment, a cash register, and draperies for the dining area. It was also agreed the restaurant would be operated in conjunction with the motel on a 24 hour daily basis. that room service would be provided for motel guests; and that motel guests could charge meals to their room accounts, which charges would be collected by the motel and remitted to Appellant.
Verbal negotiation between the parties progressed to the point that in September, 1972, Appellant resigned his Baton Rouge position, accepted a temporary job in Hammond, and devoted a considerable portion of his time to supervising construction of the restaurant. It was anticipated the restaurant would open in February, 1973, but construction delays, namely, difficulty in obtaining a particular brick, and inability to secure a paving contractor to surface the expanded parking area, deferred the opening date to July 9, 1973.
As of opening date, no agreement had been reached on the rental, although the parties had verbally agreed to a 5-year lease with an option to renew. It is undisputed that Appellee repeatedly stated he wished to base the rental on the total construction cost of the restaurant and parking facilities, for which reason he could not *737 quote Appellant a lease figure until these costs were ascertained. By mutual agreement, however, the rental was temporarily fixed at $1,000.00 per month, commencing July 9, 1973, until such time as Appellee obtained his final cost figures.
To pay for the kitchen equipment and other facilities Appellant was obliged to provide, Appellant obtained a loan with a local bank in the sum of $35,000.00, of which sum $26,000.00 was to be used for equipment purchases and the remainder for stocking the restaurant and other initial operating expenses. The loan was made possible to Appellant only because Appellee verbally guaranteed payment; it is conceded, however, that Appellee did not co-sign or endorse the note.
Appellant operated the restaurant pursuant to this verbal arrangement from July 9, 1973 until March 12, 1974, when Appellant closed the restaurant at the end of the day's business, about 10:30 P.M. During this interval, Appellant paid rentals aggregating $6,000.00, based on the verbal agreement to pay $1,000.00 monthly, leaving an arrearage of about $2,000.00.
Shortly after the restaurant opened, difficulties and misunderstandings arose between the parties concerning Appellant's managerial ability. Appellee was disappointed and dissatisfied with the demeanor, dress and attitude of the waitresses and cashier and the inability or refusal of the help to keep the tables, counters and floors clean and orderly. Dissension also arose over restaurant employees parking their cars in areas reserved for motel and restaurant guests, instead of parking in more remote area designated for employee parking. The record establishes that while Appellant resented Appellee's intrusion in Appellant's internal problems, Appellant, nevertheless permitted Appellee to exercise to some degree the rights of an owner as distinguished from those of a lessor.
Approximately two months after occupancy began, Appellant became apprehensive that he would not be granted a written lease. He requested that a lease be confected and was told that Appellee did not then have the required cost figures. In January, 1974, Appellant applied for a loan from the Small Business Administration and was advised his application would have to be accompanied by a written lease, which circumstance was made known to Appellee. On February 15, 1974, Appellant again requested a written lease be executed. Appellee's response was to present a long written list of grievances concerning the operation of the restaurant. On or about February 22, 1974, Appellee verbally advised Appellant in effect that it was apparent Appellant would not exert his authority as manager of the restaurant and see that the place was kept clean and operated in an orderly manner. Appellee added that if Appellant did not intend to change, Appellant might as well leave and that Appellee would take over, do the best he could and pay Appellant for Appellant's equipment and inventory.
The following day, Appellant asked Appellee if it would be convenient for Appellant to leave three days later. Appellee responded by reminding Appellant that Appellant had a banquet scheduled for March 12, 1974, and Appellant should honor his commitment to the group involved. It was tentatively agreed Appellant would vacate the premises on March 15, 1974. The following week, Appellant advised Appellee that Appellant preferred to leave at the close of business on March 12, 1974, which Appellant did.
The record leaves no doubt but that the parties intended a written lease was to be confected between them. Appellee explained that not only could he not determine the rent until he had his final cost figures for construction of the restaurant and parking, but that it was also necessary to agree on what service the restaurant would provide motel guests; how guest charges would be paid to the restaurant by the motel; and numerous other details concerning operation of the restaurant which affected or concerned the motel and its guests. In effect, Appellant concedes it was intended that a written lease be entered into but that all aspects of the arrangement *738 had been agreed upon except the rent. Alternatively, Appellant urges a verbal lease at a rental of $1,000.00 per month.
Where parties contemplate that a final agreement is to be reduced to writing which shall contain in detail the arrangement between them, and that the existence of the contract between them depends upon its reduction to writing, the contract does not come into existence and is not enforceable until it is put in writing and executed by them. Laroussini v. Werlein, 52 La.Ann. 424, 27 So. 89 (1899); Dreyfuss v. Process Oil & Fuel Co., 142 La. 564, 77 So. 283 (1917); Stewart v. Schmauss, 191 So.2d 882 (La.App. 1st Cir. 1966).
The record is clear beyond doubt that the parties intended to enter a written lease and that complete agreement was never reached as to its precise terms. Appellant conceded he repeatedly asked that the lease be reduced to writing and that Appellee consistently refused because he could not determine the rent to be charged. It is also clear that the verbal agreement to lease for $1,000.00 per month pending execution of the anticipated written lease, was a lease on a month to month basis, because no other term was even considered by the parties. We also find the anticipated 5-year lease with option to renew never came into existence because the parties never agreed upon one of the most vital aspects of a lease, namely, the rental to be paid.
Appellant's invocation of the rule that where parties enter into a lease and act upon the agreement, neither may withdraw on the pretext that a contract of lease was not reduced to writing although a written agreement was contemplated, is without merit under the circumstances of this case. In such instances, if a verbal agreement includes all essential details of a lease and is acted upon accordingly, the agreement is binding. Such an agreement, however, must include the essentials of a lease, namely, the thing, the price and the consent. Johnson v. Williams, 178 La. 891, 152 So. 556 (1934); Knights of Pythias v. Fishel et al., 168 La. 1095, 123 So. 724 (1929). In this instance, the parties failed to agree on any rental or term other than a $1,000.00 rental on an interim monthly basis until such time as the prospective lessor determined the rent he would charge for a 5-year lease with option to renew, in addition to other terms to be agreed upon. It is elementary that there can be no lease until there is agreement as to the rental to be paid. McCain v. McCain, 165 La. 884, 116 So. 221 (1928).
We find there was a lease in this instance on a month to month basis at a rental of $1,000.00. Brandagee v. Fernandez, 1 Rob. 260 (1842).
It is well recognized in our law that agreements may be revised or abrogated by mutual consent of the parties thereto. LSA-C.C. Articles 1901, 1945, 2130; Prisock v. Boyd, 199 So.2d 373 (La.App. 2d Cir. 1967). The trial court concluded the parties terminated the agreement between them by mutual consent. We find this determination clearly supported by the evidence.
Having found the parties rescinded the verbal lease by mutual agreement, it follows that Appellant's claims for loss of profits and other alleged damages predicated upon avowed breach of lease were properly rejected by the trial court.
Appellee concedes his agreement to purchase all of the equipment installed in the restaurant at Appellant's expense and to reimburse Appellant the actual cost thereof. Appellee concedes he is using much of this equipment in operating the restaurant as Appellee's personally owned and conducted business. It is impossible, from the record, to determine what amount is owed Appellant for equipment retained and being used by Appellee. In oral argument, Appellee indicated the matter of payment for equipment had been completed in one form or another. However, the record itself does not support such a conclusion.
Out of an abundance of caution, we reverse that portion of the trial court's judgment which rejected Appellant's claim for reimbursement of equipment. Under the circumstances, we remand this matter to *739 the trial court for such further hearing as may be necessary for the parties to be fully heard on the question of payment due Appellant, if any, for equipment retained and/or used by Appellee, reserving to both Appellant and Appellee all rights, benefits and obligations incident to any agreement or arrangement they may have entered into regarding payment due Appellant for equipment installed in the restaurant.
Considering Appellee has neither appealed nor answered Appellant's appeal, Appellee is entitled to no relief from that part of the judgment which rejected Appellee's claim for rent. LSA-C.C.P. Article 2133.
It is ordered, adjudged and decreed that the judgment of the trial court rejecting plaintiff's demands for payment of equipment retained and/or used by defendant, be and the same is hereby annulled, reversed and set aside, and in all other respects the judgment is affirmed.
It is further ordered, adjudged and decreed that this matter be remanded to the trial court for further proceedings consistent with the views herein expressed, all costs of these proceedings to date to be paid by plaintiff and defendant equally.
Affirmed in part, reversed in part and remanded.