**63 So.2d 1**

**PENDLETON v. McFARLANE.**

No. 39987.

Jan. 12, 1953.

Theodore H. McGiehan, Michael H. Bagot, William M. Zibilich, New Orleans, John W. Bryan, Jr., New Orleans, of counsel, for appellant.

Jones, Waechter & Walker, Joseph M. Jones, George Denegre, New Orleans, Milton LeBlanc, New Orleans, of counsel, for appellee.

LE BLANC, Justice.

On November 28, 1939, defendant, F. G. McFarlane, obtained $500 on a loan made to him by the plaintiff, Forrest C. Pendelton. A note for the amount of the loan

dated the same date, and made payable in ninety days with interest at 6% per annum was executed by defendant. At the same time he signed a letter addressed to the plaintiff in which it is stated that as security for the loan, he pledged the entire contents of his gymnasium and turkish bath located in the Senator Hotel. These articles are fully described in the letter. The letter also contains the following clause which is the subject of this lawsuit:

"In consideration of this loan to me I agree to incorporate a company for the purpose of engaging in the ship chandlery business in New Orleans, this Company to have an authorized capital of $5000.00 and to deliver to you, free of all costs and subject to no assessment, shares of the capital stock of this company having a par value of $500.00."

Defendant was unable to pay the note at its maturity and payment was extended ninety days from March 15, 1940. In the meantime he was organizing a corporation known as "F. G. McFarlane, Inc.", the charter or act of incorporation bearing date March 15, 1940 and the certificate of the Secretary of State having issued as of March 22, 1940.

On July 12, 1940, defendant paid the note of $500 in full as evidenced by the following notation written in the margin of the letter: "Note of $500.00 has been paid in full. July 12, 1940. (Signed) Forrest C. Pendleton." The letter remained in the possession of the plaintiff and seems to have been ignored or forgotten for almost nine years when, on May 18, 1949, he made written demand on defendant for the stock referred to in the hereinbefore quoted clause. On defendant's refusal to comply with his demand, plaintiff instituted this proceeding.

In his petition plaintiff recites the facts as herein outlined except that he alleges, in addition, that on numerous occasions, he called on defendant to deliver the stock to him and then, after alleging that he is entitled to receive $500 par value of the stock of the corporation organized by defendant and of a proportionate share of all dividends and other rights paid by it since the date of incorporation, he prays for judgment decreeing him to be the owner of that amount of stock in the corporation and as such entitled to his share of all dividends and other rights paid since its incorporation.

Plaintiff had annexed to his petition certain interrogatories addressed to the defendant by which he sought detailed information regarding the company which had been incorporated and upon this information having been supplied, and also upon defendant's answer having set out that if plaintiff is entitled to anything he was not entitled to specific performance as he had an adequate money relief, he filed a supplemental and amended petition in which he alleges in the alternative, that if it should be found that he is not entitled

to a judgment decreeing him to be the owner of the stock, or if, for any reason, defendant should not be able to deliver the stock, together with its emoluments, then he is entitled to a monied judgment in the sum of $500, the amount of the stock, and the further sum of $29,000, the amount which an investment of $500 in the stock of F. G. McFarlane, Inc., should have earned since the date of its incorporation.

Defendant filed an exception of vagueness and a plea of prescription, both of which were overruled. He also filed an exception of no right or cause of action which was referred to the merits. He then filed an answer in which he admitted borrowing $500 from plaintiff, giving his note as evidence thereof, with security, all as set out in the letter dated November 28, 1939 and then avers that all of his obligations thereunder were satisfied on July 12, 1940, as shown by the endorsement written on the letter on that date and signed by the plaintiff.

In the alternative defendant pleaded that if it should be found that he had obligated himself to deliver stock in full ownership to the plaintiff, in addition to the payment of the note with interest, such an undertaking was violative of the law of usury in this State and therefore his claims are barred.

In the further alternative he pleaded that should it be found that his obligations were not satisfied by the payment made on July 12, 1940 and that the contract to deliver the stock was not usurious, then plaintiff's claim of ownership of the stock was lost to him by virtue of having been acquired by defendant by the prescription of three years.

Again, in the alternative, he pleaded that if for any reason his obligations were not fully satisfied by payment that the rights of the plaintiff, if he had any, have been lost by his inaction from the period of the endorsement of payment of the note on July 12, 1940 until May 18, 1949, which is the first notification ever received by him that plaintiff had any further claims under the letter dated March 15, 1940; that plaintiff's complete inaction was prejudicial to him, that such delay was unjustified and that the principles of equity prohibit plaintiff from now maintaining any such rights as he claims after a period of almost nine years.

The case having been thus put at issue, evidence was taken and judgment rendered in the district court in favor of the defendant, and against the plaintiff dismissing his suit at his costs. From that judgment plaintiff is prosecuting this appeal.

A reading of the language of the controverted clause in the letter of November 28, 1939, would seem to convey the impression that the intention of the parties was that the stock therein referred to was to be delivered to the plaintiff as a bonus for the loan. That, of course, is plaintiff's earnest contention whilst defendant as earnestly contends that the stock was to be extra col-

lateral, which plaintiff wasn't interested in because he did not think it had any value at the time. A doubt thus arose as to what was the real intention and after hearing their testimony the trial judge concluded that their understanding was that when the five hundred dollars was paid on July 12, 1940, all obligations arising under the letter of November 28, 1939 were extinguished and both parties considered that the entire transaction was settled in full.

 The testimony relating to the respective intention of the parties was offered and heard without objection and it was proper, therefore, for the district judge to consider and act on it in reaching his decision. Article 1956 of the LSA–Civil Code supplied the necessary authority for him to do so. It provides as follows: "When the intent of the parties is doubtful, the construction put upon it, by the manner in which it [the contract] has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation." Granting, for the sake of argument, that the contract in this case contemplated the delivery of certain stock by the defendant to the plaintiff, it appears certain to us that when, on July 12, 1940, he executed the contract without such delivery, it was with the implied assent, at least, of the plaintiff that he did so. Plaintiff made no demand for the stock at the time although he was aware that a corporation had been organized, and he made no satisfactory

proof of any other demands until the one he made by letter on May 18, 1949 when "in looking through some other papers" as he testifies, "he ran across the letter" of November 28, 1939 which forms the basis of his present demands.

We conclude from the testimony, as did the trial judge, that on July 12, 1940, when defendant paid the note of $500, both parties considered that all his obligations to plaintiff had been settled in full.

In view of the conclusion we have reached we pretermit a discussion of any of the other issues and pleas urged in defense of plaintiff's action by the defendant.

For the reasons stated, the judgment appealed from is affirmed at the costs of the plaintiff, appellant.