Dear President Rodriquez:
On behalf of the St. Bernard Parish Government you have requested the opinion of this office concerning the validity of the procurement process used in securing two contracts for hurricane debris management and removal. The contracts are between the St. Bernard Parish Government and Unified Recovery Group, L.L.C. ("URG").
 Background Facts
The two contracts at issue consist of successive contracts for the management and removal of debris generated in St. Bernard Parish as the result of Hurricanes Katrina and Rita. The second contract was intended to take the place of the original contract between St. Bernard and URG. You have advised our office that all requisite formalities were followed, and that the contracts were executed by you as Parish President.
It is our understanding from your request that the St. Bernard Parish Government initially contracted with URG on an emergency basis within days after Hurricane Katrina, entering that first contract on September 3, 2005. St. Bernard confected the first contract with a consortium of contractors, who then formed URG and assigned the contract to URG, making the assignment with the written consent of the Parish. URG worked under this first contract for the next several months.
St. Bernard elected to replace the first contract with a new contract procured by using a competitive proposal process. Accordingly, in late October 2005, St. Bernard issued a Request for Proposals (RFP) to various debris removal contractors.
Prior to the issuance of the RFP the St. Bernard Department of Public Works developed a scoring system to be would use to evaluate the proposals that it anticipated receiving. The St. Bernard Parish Government published the scoring system as part of the RFP issued to potential contractors. *Page 2 
The Department of Public Works based this scoring system on the criteria that the St. Bernard Parish Code of Ordinances imposes when the Parish lets out professional service contracts for the design of water and sewer capital improvements. Sections 9-53 and 9-54 of the Code of Ordinances establish a procedure for the procurement of such professional services. Although debris management and removal services do not qualify as professional design services, and the ordinances were not directly applicable by their terms, the ordinances did provide an appropriate guide for evaluating and scoring the proposals submitted in connection with the procurement of the management and debris removal contracts.
Twelve firms, including URG, submitted proposals in response to the request from St. Bernard. After an extensive review process focusing on various criteria, including price, qualifications, and local subcontractor participation, St. Bernard again selected URG.
After selecting URG, St. Bernard engaged in further price negotiations with URG that resulted in reductions to the prices URG had quoted in its proposal. St. Bernard and URG entered into the second contract with an effective date of December 9, 2005.
 The Validity of the Procurement Process
According to your request, various parties, including representatives of the Federal Emergency Management Agency ("FEMA"), have suggested that state law might have required that these contracts be put out for public bid. For the reasons hereinafter stated, Louisiana state law does not require that contracts of this type be procured pursuant to the Louisiana Public Bid Law. Apart from the general laws pertaining to all contracts, the Parish is not required to follow any prescribed procurement process.
The Louisiana Public Bid Law, LSA-R.S. 38:2211-2296, regulates contracts by local public entities when the contracts relate to the construction of public works or the acquisition of materials and supplies.[1] However, contracts for services, professional or otherwise, are not subject to the requirements of that statute.[2]
Louisiana's Third Circuit *Page 3 
Court of Appeal has specifically held that a debris removal contract is a service contract, not a public works contract subject to the public bid laws.[3]
The result may be different if the contract were with a state entity since Louisiana state entities are subject to the Louisiana Procurement Code which is explicitly applicable to contracts for services. LSA-R.S.39:1554B. This provision does not apply to political subdivisions and therefore no limitation exists on the process or type of service agreement a political subdivision may negotiate.
It further appears that St. Bernard Parish does not have a local ordinance that applies by its terms to debris removal contracts. Consequently, it appears that the Parish acted properly and prudently when it modeled its procurement process and criteria for the second contract on provisions that govern somewhat analogous situations described in its local ordinances. In fact, with respect to the second contract, St. Bernard followed the advice that this office has previously supplied parish governments to the effect that, although not required, that the "request for proposals process would . . . be a valid means of selecting a contractor, giving weight to relevant factors in addition to price."[4]
Acting as it did in an emergency situation, St. Bernard did not employ the request for proposals process for the first contract. However, no local or state laws restricted the freedom of contract afforded to the Parish by general laws of contract when it entered either the first contract or the second service contract. Therefore, based on the foregoing information, each of the two service contracts appears to have been validly procured under all applicable Louisiana laws and constitute enforceable agreements binding of both the Parish and the URG.
Your opinion request references the involvement of FEMA in this procurement process which would indicate that the Parish may be seeking reimbursement in whole or in part for the expenses incurred by the Parish in connection with these two contracts. We must point out that being able to correctly navigate the complex maze of FEMA laws, rules, and regulations is essential to insure proper reimbursement for any of the obligations or payments associated with the management and debris removal contracts. *Page 4 
Typical language contained in reimbursement agreements between FEMA and local governments require that all local laws must be complied with in the execution of debris cleanup. The potential penalty for not getting eligibility right is that the parish may not be able to obtain reimbursement for their expenditures on debris management.[5] Such a reality can be extremely detrimental for local governments that seldom have the wherewithal to cover the full expenses of the debris removal. Thus, in order to secure reimbursement funding, all local laws, in addition to state and federal laws, must be complied with.
This office is therefore of the opinion that contracts for hurricane debris management and removal would constitute service contracts and would not be subject to the requirements of the Louisiana Public Bid Law.
We trust that this answers your inquiry.
 Very Truly Yours,
 CHARLES C. FOTI, JR.
 Attorney General
 By:____________________
 RICHARD L. MCGIMSEY
 Assistant Attorney General
 Public Finance Contracts Section
CCF/RLM/dam
[1] The provisions in La.R.S. 38:2181 — 2320 regulate "Public Contracts." A "Public Contract" is defined as "any contract awarded by any public entity for the making of any public works or for the purchase of any materials or supplies." La.R.S. 38:2211(10). Louisiana also has a state Procurement Code, La.R.S. 39:1551 et seq., that local political subdivisions may choose to adopt by ordinance. La.R.S. 39:1554(E). St. Bernard Parish has not adopted the Louisiana Procurement Code.
[2] See Op. Atty. Gen., No. 02-0418, December 2, 2002 (Louisiana Attorney General opinion ruling that the Louisiana Public Bid Law, La.R.S. 38:2181, et seq., including its provision on the procurement of professional services La.R.S. 38:2310(7), did not apply to procurement of services involving removal of debris from reservoirs, canals and levees because "no limitation exists on the type of service agreement a political subdivision may negotiate."); Op. Atty. Gen. 92-717 (Public Bid Law does not apply to contract for services of electrician and owners of heavy equipment to restore public service after Hurricane Andrew), Op. Atty. Gen. 97-239 (Public Bid Law does not apply to contract for collection of solid waste), Op. Atty. Gen. 99-280 (Public Bid Law does not apply to contract for electrical and mechanical services), Op. Atty. Gen. 03-0108 (Public Bid Law does not apply to contract for professional services of engineers, geologists and other professionals). Op. Atty. Gen., No. 84-229, March 8, 1984 (Louisiana Attorney General opinion ruling that Louisiana's Procurement Code for state agencies, La.R.S. 39:1551 et seq. did not apply to a parish that had not adopted that Code, and that the Louisiana Public Bid Law, La.R.S. 38:2181, et seq., did not apply to procurement of waste disposal services that did not involve either the construction of a public work or the acquisition of materials or supplies).
[3] See Regency Construction, Inc. v. Lafayette City-ParishConsolidated Gov't, 847 So. 2d 796 (La.App. 3rd Cir. 2003) (holding that a contract for hurricane debris removal is not subject to the provisions of Louisiana's Public Bid Law).
[4] See Op. Atty. Gen., No. 02-0418, December 2, 2002.
[5] See e.g., FEMA 322, supra, note 14 at 90 (noting that "FEMA may be required to deobligate funds after the initiation of a project" for failure to comply with certain laws).